FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 21, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| VERONICA R., OBO: E.R. MINOR,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>Defendant. | No. 1:24-CV-03126-SAB<br><br>**ORDER AFFIRMING THE DECISION OF THE COMMISSIONER** |

Plaintiff brings this action seeking judicial review of the Commissioner of Social Security's final decision denying her application for social security benefits, filed on behalf of her minor child E.R. Plaintiff is represented by Chad Hatfield. The Commissioner is represented by Noah Schabacker and Brian Donovan.

After reviewing the administrative record, briefs filed by the parties, and applicable case law, the Court is fully informed. For the reasons set forth below, the Court **affirms** the Commissioner's decision.

## I.    JURISDICTION

On March 2, 2022, Plaintiff filed an application for supplemental security income ("SSI") on behalf of her minor son, E.R., with the onset date as his birth on April 3, 2021. He suffered symbrachydactyly, respiratory syncytial virus ("RSV"),

**ORDER AFFIRMING THE DECISION OF THE COMMISSIONER** ~ 1

and has other breathing issues. On June 6, 2022, the Social Security Administration ("SSA") initially denied Plaintiff's claim for SSI payments.

Plaintiff E.R.'s mother appealed and the SSA affirmed. She timely requested a hearing in front of an Administrative Law Judge ("ALJ"), which took place telephonically on November 15, 2023.

On December 21, 2023, the ALJ found E.R. not disabled and that he had not been since the application was filed in March 2022. Plaintiff E.R.'s mother requested a review by the Appeals Council, which was denied. The Appeals Council's denial of review makes the ALJ's decision the "final decision" of the Commissioner of Social Security, which this Court is permitted to review. 42 U.S.C. §§ 405(g), 1383(c)(1)(3).

Plaintiff E.R.'s mother filed a timely appeal on August 25, 2025. ECF No. 1. The matter is before this Court pursuant to 42 U.S.C. § 405(g).

## II.     CHILDHOOD SEQUENTIAL EVALUATION PROCESS

A child under the age of 18 is considered disabled under the Social Security Act if they have a medically determined physical or mental impairment causing "marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C).

The Commissioner has established a three-step sequential evaluation process to determine whether a child is eligible for SSI benefits. *See* 20 C.F.R. § 416.924.

**Step One**: Is the child engaged in "substantial gainful activity"? *See* 20 C.F.R. § 416.924(a) – (b).

**Step Two**: Does the child have a "medically determinable impairment that is severe"? 20 C.F.R. § 416.924(c). Such an impairment is defined as causing "more than minimal functional limitations." *Id.*

**Step Three**: If severe impairment is found, the reviewing entity must consider whether the impairment "medically equals" or "functionally equals" a

**ORDER AFFIRMING THE DECISION OF THE COMMISSIONER** ~ 2

disability listed in the regulatory Listing of Impairments.[1] 20 C.F.R. § 416.924(c) – (d). The entity reviewing whether a child's impairment or combination of impairments meets or medically equals a listing must assess six functional domains:

    (i)    Acquiring and using information;

    (ii)    Attending and completing tasks;

    (iii)    Interacting with and relating to others;

    (iv)    Moving about and manipulating objects;

    (v)    Caring for yourself; and

    (vi)    Health and physical well-being.

20 C.F.R. § 416.924a(b)(1)(i) – (vi).

If at least two of the six functional domains are present or at least one domain is extremely limited, then an impairment is considered to functionally equal a listed impairment. *See* 20 C.F.R. § 416.926a(a). A marked limitation "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id.* at § 416.926a(e)(2). An extreme limitation "interferes very seriously" with the abilities. *Id.* at § 416.926a(e)(3). A reviewing ALJ must consider all medically determinable impairments—including those not deemed severe—in determining whether a limitation is marked or extreme. *Id.* at § 416.926a(a). The ALJ also must consider the limitation of any impairment on any affected domain because "[a]ny given activity may involve the integrated use of many abilities and skills; therefore, any single limitation may be the result of the interactive and cumulative effects of one or more impairments. And any given

---

[1] Disability Evaluation Under Social Security, Listing of Impairments – Childhood Listings (Part B), https://www.ssa.gov/disability/professionals/bluebook/ChildhoodListings.htm (last visited May 5, 2025).

**ORDER AFFIRMING THE DECISION OF THE COMMISSIONER** ~ 3

impairment may have effects in more than one domain." *Id.* at § 416.926a(c).

### III. STANDARD OF REVIEW

The Commissioner's determination will be set aside only when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but "less than a preponderance," *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

A decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secr'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). An ALJ is allowed "inconsequential" errors as long as they are immaterial to the ultimate nondisability determination. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). The court must uphold the ALJ's denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the decision of the administrative law judge. *Batson v. Barnhart*, 359 F.3d 1190, 1193 (9th Cir. 2004). It "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quotation omitted). "If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019.

### IV. STATEMENT OF FACTS

The facts have been presented in the administrative record, the ALJ's decision, and the briefs to this Court. Only the most relevant facts are summarized here.

**ORDER AFFIRMING THE DECISION OF THE COMMISSIONER** ~ 4

Plaintiff's minor child E.R. was born on April 3, 2021, and suffers from left hand symbrachydactyly of the middle, ring, and little finger. Plaintiff E.R.'s mother alleges he also suffers from receptive language delays and chronic viral illnesses.

At the time of the ALJ hearing on November 15, 2023, E.R. was an older infant at just over two and a half years of age. Plaintiff E.R.'s mother testified at the hearing that E.R. grabs for items with his left hand initially, such as when he is brushing his teeth. AR 49. But his weak grip causes him to drop objects, and he subsequently reaches out with his right hand. "[W]hen he throws balls or anything, he'll try grabbing it with his left but he can't, so he'll do it with his right." AR 49. E.R.'s biological father and grandmother are left hand dominant. She further testified:

> He gets frustrated using a fork because he tries grabbing it with [his] left or doing anything with his left and he can't[,] and he'll end up eating with just his hands. Like[,] because he can't grip nothing, so he gets[,] like[,] frustrated. I'll also catch him at times trying to like do stuff with that hand, but he just can't[,] and he'll start crying.

AR 50.

Plaintiff E.R.'s mother described E.R.'s left hand as pig-like, short, and with a dot for a fingernail. He also is missing bones in the hand.

The ALJ noted at the hearing that Plaintiff E.R.'s mother had not updated the medical record with information regarding a future surgery planned with a Seattle specialist in spring 2024 to correct the hand. Doctors previously attempted to correct one finger using a splint, without success.

Plaintiff E.R.'s mother told the ALJ of another future plan to begin speech therapy because she stated E.R. faces challenges understanding her, unlike other children she observes at his age. "So if I tell him something, he won't – like he'll just look at me for a while. Like[,] I constantly have to repeat myself or I'll just have to do it because he won't understand." AR 53. During a Receptive Expressive

**ORDER AFFIRMING THE DECISION OF THE COMMISSIONER** ~ 5

Emergent Language Test – Fourth Edition ("REEL – 4") standardized language test conducted on April 12, 2023, at age 2, E.R.'s performance was rated -1.5 standard deviations below the median or roughly in the 6.5 percentile. He (1) was not using sentences or phrases to communicate his wants and needs; (2) was unable to retrieve items not in the same room; (3) showed signs of frustration when his mother, Plaintiff, took away a quarter coin for safety concerns; and (4) he could not be in the room while his mother was cooking because he did not respond to directions such as "hot" or "danger".

Plaintiff E.R.'s mother further testified about E.R.'s chronic health issues regarding his breathing and noted he gets sick almost every month and must use a nebulizer regularly. He also suffers from ear infections and must receive frequent acute care, including the use of a medication prednisone.

> He has to use it for a good while because he'll start like being congested and not being able to breathe right, coughing and stuff. They give that to him because there is a possibility, he might have asthma. And his dad does have it.
>
> [. . .]
>
> Like one month [. . .] it's like his lungs, like a lot of mucous, so he'll have to use that to help cough up the mucous because if not, they start going down to his – I think it's called lungs and in Spanish, it's pumonas. And when he caught RSV, that's what was happening [. . .]

AR 53–54.

Between July 1, 2021, and March 8, 2023, E.R. was treated 19 times for various illnesses including viral bronchiolitis, parainfluenza, bilateral otitis media, fever, diarrhea, congestion, croup, hand/foot/mouth disease, cough, nasopharyngitis, and vomiting.

## V.   THE ALJ'S FINDINGS

The ALJ issued an opinion affirming denial of SSI benefits for Plaintiff on

**ORDER AFFIRMING THE DECISION OF THE COMMISSIONER** ~ 6

behalf of E.R. AR 18–31. Under the three-part Childhood Sequential Evaluation Test, she found at step one E.R. had not engaged in substantial gainful activity because there was no evidence of work activity for pay or profit on or after the application date. AR 19.

At step two, she found E.R. does have severe impairment in the form of symbrachydactyly where his lateral three fingers on his left hand are fused or incompletely formed and his middle finger is flexed. AR 19. She found this medically determinable impairment to be severe because it affects him more than minimally. AR 19.

The ALJ found the medically determinable physical impairments of parainfluenza virus on three occasions, otitis media, acute gastroenteritis, traumatic hematoma of the forehead, acute upper respiratory infection, bronchiolitis, and croup, did not meet the duration requirement to be considered chronic and therefore severe. AR 19.

At step three, the ALJ determined E.R.'s history of left-handed symbrachydactyly did not rise to the level of meeting or equaling an impairment as listed on the Listing of Impairments, looking particularly at Listing 101.24 for musculoskeletal disorders of infants and toddlers, from birth to attainment of age 3, with developmental motor delay. AR 22. The ALJ determined E.R. had no limitation in domains i – iii and less than a marked limitation in domains iv – vi. AR 22.

The ALJ ultimately determined E.R. had not been disabled as defined under the Social Security Act since the time of filing on March 2, 2022. AR 26–27.

## VI.    ISSUES

1. Did the ALJ properly evaluate the medical opinions?
2. Did the ALJ conduct a proper Step Two evaluation?
3. Did the ALJ properly evaluate Plaintiff's testimony?

//

**ORDER AFFIRMING THE DECISION OF THE COMMISSIONER** ~ 7

## VII. DISCUSSION

### A. The ALJ's Evaluation of the Medical Opinions

In evaluating medical opinion evidence, the ALJ considers the persuasiveness of each medical opinion and prior administrative medical finding from medical sources. 20 C.F.R. § 416.920c(a) and (b). The ALJ is required to consider multiple factors, including supportability, consistency, the source's relationship with the claimant, any specialization of the source, and other factors (such as the source's familiarity with other evidence in the file or an understanding of Social Security's disability program). 20 C.F.R. § 416.920c(c)(1)–(5).

Supportability and consistency of an opinion are the most important factors, and the ALJ must articulate how they considered those factors in determining the persuasiveness of each medical opinion or prior administrative medical finding. 20 C.F.R. § 416.920c(b)(2). The ALJ may explain how they considered the other factors, but is not required to do so, except in cases where two or more opinions are equally well-supported and consistent with the record. *Id.*

Supportability and consistency are further explained in the regulations:

> **(1) Supportability.**
> The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> **(2) Consistency.**
> The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id.*

In evaluating medical opinion evidence in a child case, the ALJ also considers evidence that describes the impairment symptoms, signs, and laboratory findings. 20 C.F.R. § 416.924(a)(1). This can include formal testing to show

**ORDER AFFIRMING THE DECISION OF THE COMMISSIONER ~ 8**

standards of deviation, percentiles, percentages of delay, or age and grade equivalents; it can also include medical opinions regarding the nature or severity of impairments. *Id.* Medical evidence also includes test scores and medical sources, such as clinical examinations. *Id.* But any medical evaluation must consider the information provided by parents and people who know the child, such as teachers and therapists. *Id.*

The ALJ is required to consider multiple factors, including how functioning compares to other children without impairments; combined effects of multiple impairments; how well a child can initiate, sustain, and complete activities, with or without adaptations; unusual settings; early intervention and school programs; the impact of chronic illness and limitations on activities over time; and the effects of treatment and intervention. 20 C.F.R. § 416.924a(b)(3)-(9).

Plaintiff E.R.'s mother argues the ALJ improperly evaluated the medical opinion evidence of medical expert Dr. William Biles and treating medical physician registered nurse Irma Mejia, APRN.

The Commissioner asserts the ALJ's evaluation of Dr. Biles and APRN Mejia's opinions was supported by substantial evidence and was legally correct.

### 1. Dr. Biles' Medical Opinion

Dr. Biles testified at the administrative hearing and interacted with Plaintiff to clarify pieces of the record and her testimony. Dr. Biles found E.R.'s symbrachydactyly to be a medically determinable impairment but that it did not "meet, equal, or functionally equal a medical listing." AR 23.

For the six domains—and based on his education, knowledge, experience, and review of the record—he found less than marked limitation for two domains and no evidence of limitation in four domains. He specifically noted E.R.'s ability to grasp objects in his left hand using his index finger and thumb and fully flex the two fingers. Fingers three, four, and five were fused and incompletely formed, but with the combination of the other two fingers, he had less than marked limitation

**ORDER AFFIRMING THE DECISION OF THE COMMISSIONER** ~ 9

on the left hand as a whole. He further found no limitations for acquiring and using information; interacting and relating to others; attending or completing tasks; and caring for oneself. AR 42–43. The less than marked limitations were for moving about and manipulating objects and health and physical wellbeing.

Further, Dr. Biles stated the other noted limitations, such as the intermittent sickness, were typical for a young child like E.R and did not impact his abilities under the six domains because they did not reach the level of chronic illness.

In evaluating Dr. Biles testimony and analysis, the ALJ found Dr. Biles opinion to be persuasive. She noted his findings were supported by the medical records and the standardized tests performed to evaluate E.R.'s skills both physically and in language development.

The ALJ then looked at objective medical evidence; other medical evidence on the record; information from people in E.R.'s life such as teachers, family members, and friends; statements from E.R.'s parents, including Plaintiff E.R.'s mother, and other caretakers; and other relevant evidence showing E.R.'s functions over time at home, at school, and in the community. She considered whether the impairment resulted in marked limitation in at least two domains or extreme limitation in one domain.

The ALJ also considered treatment history. In a July 20, 2021, treatment note from E.R.'s pediatric orthopedist, the doctor noted normal function of the left-hand thumb and index finger but little function of the other three fingers due to the symbrachydactyly. They did not plan for intervention. In a March 1, 2022, follow up appointment, the pediatric orthopedist noted E.R. was doing well and that they would try a splint on the left hand to help with flexion in the middle finger. On June 22, 2022, E.R. was fitted with a splint at Seattle Children's Hospital. However, subsequent appointments showed no measurable improvement on the middle finger from the splint. On July 11, 2023, E.R. was again seen by a physician who noted he was right hand dominant but used his left hand for playing.

**ORDER AFFIRMING THE DECISION OF THE COMMISSIONER** ~ 10

On October 17, 2023, E.R. attended another orthopedic consultation, in which Plaintiff E.R.'s mother and E.R.'s father expressed interest in surgical intervention to release the left-hand middle finger for proper flexion. The orthopedist recommended the surgery.

Ultimately, the ALJ determined Dr. Biles' findings were "consistent with the evidence as a whole and were persuasive," especially given Dr. Biles' qualifications and expertise as a board-certified pediatrician. AR at. 25.

Substantial evidence supports the ALJ's evaluation of Dr. Biles' medical opinion. The ALJ considered his qualifications, the method in which he evaluated E.R.'s ability, and the application of the six functional domains, as outlined in 20 C.F.R. § 416.924a(b)(1)(i) – (vi). Further, the ALJ's evaluation of his opinion was consistent with prior medical evaluations and records of E.R.'s treatment.

The ALJ reasonably relied on a thorough review of the treatment records, and testimony supported Dr. Biles' finding of less than marked impacts of the symbrachydactyly impairment on E.R.'s abilities.

The ALJ **did not err** in evaluating Dr. Biles' medical opinion.

2.     APRN Irma Mejia's Medical Opinion

On January 11, 2023, treating provider Irma Mejia, APRN, provided a medical source statement that found E.R. suffers from symbrachydactyly of the left hand, requiring surgery; marked limitation of acquiring and using information due to the left-hand limitation; and marked limitation moving about and manipulating objects with the left hand. She noted these limitations have existed since birth and E.R. was waitlisted for speech and language therapy and received treatment for the left hand at Seattle Children's Hospital. She found his limitations disabling.

The ALJ was unpersuaded by APRN Mejia's opinions:

> In making these determinations, [Nurse Mejia] opined the claimant had limited use of the left hand and a poor prognosis but did not provide any additional rationale. Her determinations did not give adequate

**ORDER AFFIRMING THE DECISION OF THE COMMISSIONER** ~ 11

> consideration to the evidence of record, which showed the claimant had only a standard deviation of -1.5 from the mean on a receptive expressive emergent language test, which, per Dr. Biles testimony, is not a significant deviation in a children of the claimant's age. Her opinion was also inconsistent with the record showing that the claimant retained full range of motion with flexion and extension of the left index finger and thumb, was noted to be able to pinch and grasp with that extremity, and use that extremity to manipulate and move objects. Furthermore, I gave deference to the testimony of the impartial medical expert, Dr. Biles, who disagreed with this determination.

AR 26.

While APRN Mejia's assessment of domain (iv) finding marked limitation moving about and manipulating objects on the left hand was echoed by a Disability Determination Evaluation performed by Dr. Nevine Makari on June 6, 2022, Dr. Makari noted no limitation for domain (i) for acquiring and using information, which differed from APRN Mejia's assessment that E.R. had marked limitation for domain (i). AR 62. Further, Dr. Makari determined E.R. was not disabled despite the left-hand limitations.

The ALJ's finding that APRN Mejia's opinion was not persuasive is supported by the substantial evidence in the record as a whole.

The ALJ **did not err** in evaluating APRN Mejia's medical opinion.

## B. The ALJ's Step 2 Evaluation

In evaluating an impairment at Step 2 of the Childhood Sequential Evaluation Process, the claimant bears the burden of showing the child has a medically "severe impairment" or "combination of impairments." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). But the test is a "de minimis screening device to dispose of groundless claims" and is not a heavy burden. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

First, Plaintiff E.R.'s mother argues the ALJ erred in finding E.R.'s receptive language delay not a severe impairment under the standards for the purposes of SSI benefits. The ALJ considered the REEL 4 exam record and the

**ORDER AFFIRMING THE DECISION OF THE COMMISSIONER** ~ 12

ALJ's assessment of the record. She deferred to Dr. Biles' conclusion that a standard deviation of -1.5 for language development was within range for a child of E.R.'s age—roughly 2 years and 8 months at the time of assessment. Given the reading, the ALJ determined it was too early to establish the results as signaling a disabling speech/language delay.

Second, Plaintiff E.R.'s mother argues the ALJ erred in finding E.R.'s chronic viral illness as not a severe impairment under the standards for the purposes of SSI benefits. The ALJ reviewed the medical records and treatment records regarding E.R.'s bouts with flu, cold, and respiratory infections, but found the episodes to be "acute" and "short-lived," not rising to the level of a chronic illness. E.R.'s weekly use of a nebulizer during these illnesses was not unusual. She also relied on Dr. Biles' assessment that such treatments and infections were not unusual for a child of E.R.'s age.

Though the test for impairment at Step 2 is a "de minimis" test, the ALJ's determination of no severe impairment for the receptive language delay claim and for the chronic illness claim was a rational interpretation of the evidence.

The ALJ **did not err** in evaluating claims for receptive language delay or for chronic illness at Step 2 of the Childhood Sequential Evaluation Process.

C.   The ALJ's Evaluation of Plaintiff's Testimony

Plaintiff E.R.'s mother argues the ALJ (1) improperly rejected Plaintiff's testimony that E.R. is left-handed; (2) grossly understated the record regarding E.R.'s viral illnesses; and (3) failed to assess E.R.'s language deficits when compared to same-age peers.

Lay testimony, as from family members, regarding a claimant's symptoms is evidence an ALJ may consider. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). However, "[a]n ALJ need only give germane reasons for discrediting the testimony of lay witnesses. [. . .] Inconsistency with medical evidence is one such reason." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). In the case of a

**ORDER AFFIRMING THE DECISION OF THE COMMISSIONER** ~ 13

claimant's testimony, an ALJ must find a clear and convincing reason for rejecting it beyond that it was not "fully corroborated by the objective medical findings." *Smolen*, 80 F.3d at 1285.

In her decision, the ALJ considered Plaintiff's testimony, as E.R.'s mother, and the function report provided by Plaintiff and noting functionality for the first year of E.R.'s life. The ALJ found Step (1) in the evaluation process reasonably satisfied, but that the requirements of Step (2) were not met because the allegations of intensity, persistence, and limiting effects made by Plaintiff E.R.'s mother were not consistent with the medical and other evidence on the record. AR 23.

The ALJ discussed how E.R.'s family claimed they believed the child was left-handed based on family history. But in reviewing the medical records, she found treating orthopedists believed him to be right-handed after repeated care, including care at Seattle Children's Hospital in 2023. The record also showed E.R. was doing well despite the symbrachydactyly, and that reports of frustration using his left hand were not consistently expressed to treating physicians.

As for the testimony regarding respiratory complications and the frequent use of a nebulizer, the record also did not show Plaintiff reported these to physicians enough to show a consistent pattern as to find the bouts of illness resulted in a chronic condition. He received treatment for the viral illnesses on several occasions, as the ALJ noted when looking at records from 2021–2023 from Weaver Family Medicine, Providence Health, and Prosser Memorial Health. But the ALJ determined looking at the totality of the records, when juxtaposed with E.R.'s young age, the evidence did not support a finding of chronic illness and subsequent severe impairment.

Finally, the Court addressed the ALJ's findings regarding the receptive language delay claim and found she did not err in her review of the records or finding of no severe impairment.

The ALJ properly discredited the testimony of Plaintiff as E.R.'s mother—

**ORDER AFFIRMING THE DECISION OF THE COMMISSIONER** ~ 14

insofar as it did not support a ruling of severe impairment and not that it was false—and provided a germane reason for doing so because it was inconsistent with the medical records.

Thus, the ALJ **did not err** in evaluating and dismissing Plaintiff's testimony as E.R.'s mother and advocate.

## VIII.  CONCLUSION

Having reviewed the record, the ALJ's findings, and the caselaw, the Court finds the ALJ's decision is supported by the substantial evidence and free of harmful legal error.

Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiff's Opening Brief, also noted as Motion for Summary Judgment, ECF No. 10, and Reply Brief, ECF No. 15, are **DENIED**.

2. The Commissioner's Response Brief, ECF No. 14, is **GRANTED**.

3. The decision of the Commissioner is **AFFIRMED.**

4. Judgment shall be entered in favor of the Defendant and against the Plaintiff.

**IT IS SO ORDERED**. The District Court Executive is hereby directed to file this Order, provide copies to counsel, and **close** the file.

**DATED** this 21st day of May 2025.



Stanley A. Bastian
Chief United States District Judge

**ORDER AFFIRMING THE DECISION OF THE COMMISSIONER** ~ 15